Good morning, Your Honor. Renee Main is appearing on behalf of the petitioner and the appellant in this case, Mr. Calvin Charles. In 1990, in July, Mr. Charles was... You're going to have to speak up a little bit or we won't hear you. I'm sorry, Your Honor. In 1990, Mr. Charles was charged with a crime. In July of that year, he was appointed to counsel. By November of that year, he and his counsel had had many problems. Mr. Charles filed a motion with the trial court asking for alternate counsel. Nothing happened. No action was taken by the trial court. Mr. Charles was not brought before the trial court. He was not asked about the problems with his counsel. In fact, the only hearings held in November of 1990 were hearings with only the attorneys present, without Mr. Charles present. In January of 1991, counsel acknowledged that he and Mr. Charles had irretrievably broken down whatever relationship they might have had, and counsel asked the trial court to be relieved. The only reason we know that counsel asked the trial court to be relieved is because counsel made this statement on the record on the first day of trial in February. There's no indication in the record that Mr. Charles was present when counsel approached the trial judge and said, I'd like to be relieved. There's no hearing in January. There's no inquiry into what the problem was with Mr. Charles and his counsel. There's no opportunity for Mr. Charles to explain it to the court. There's no ruling. There's no record. Finally, in February of 1991, the case is called for trial. This is the first time Mr. Charles and his counsel are before the court. Also before the court that morning is the prosecutor. The first statement out of counsel's mouth is that he is renewing the motion he made over a month ago, and which Mr. Charles had made two months before that, to be relieved. The first statement out of the trial court's mouth is, in my prior ruling stance, Mr. Charles will represent himself. The Supreme Court is very, very clear that defendants have a fundamental right to the representation of counsel. The fact that Mr. Charles and his counsel had an irrevocable breakdown in the relationship was clear in January. There was indication of it in November. And yet the first time the trial court ever bothers to inquire of Mr. Charles and his counsel about what is going on is on the record, before the prosecutor, the morning of trial. And at that point, the trial court is telling Mr. Charles that he must represent himself. After telling Mr. Charles he is going to represent himself, he inquires with Mr. Charles about what exactly is the problem. Mr. Charles does make some attempt to explain. He had witness he would like to come to trial. He specifically had a Mr. Tucker. He had a theory of defense. He's not very articulate at this. He's not very good at explaining himself. But his statement is, I believe I'm being targeted for prosecution because I'm the member of a notorious criminal family, the Charles family. I believe I'm not guilty. I believe I'm not being treated fairly because the other individuals allegedly involved in this drug transaction haven't been prosecuted at all. And, in fact, if you look into the record, there's proof of Mr. Charles' defense. There is the testimony subsequently given at the Shacklin hearing by the officers all about just how notorious this Charles family was. There's Mr. Charles' affidavit who explains that none of the other individuals were prosecuted. There's the affidavit of Mr. Tucker, one of the other individuals who was supposed to be involved in this drug transaction, who specifically says the guards planted the evidence on Mr. Charles. I saw it. And, by the way, I wasn't even charged. Mr. Charles specifically notes in the record, when he's required to represent himself, that he'd asked for nine witnesses to be subpoenaed by his counsel, one of whom that he specifically mentions at 144 of the ER, which is the trial transcript, was Mr. Tucker. All we know is that not a single witness was subpoenaed by trial counsel. We don't know why. We just know that trial counsel didn't bother to subpoena a single one of the witnesses Mr. Charles wanted to testify on his behalf. And, therefore, when the trial court turned to Mr. Charles and said, please call your next witness or I will find that you rest in 30 seconds, Mr. Charles said, your system has overwhelmed me. And that is precisely what happened. A pro se individual, without the benefit of a lawyer, forced to stand trial while fully shackled at the wrists and at the hands, for the sole reason that his family happened to be a bunch of notorious criminals, and the judge thought it would be a good idea to shackle him on that basis. No, that's not what this record shows, is it? I'm sorry. I believe that's precisely what this record shows in terms of the shackling. All of the testimony was from three guards who testified about the LEDS reports on Charles' family. This record shows that the judge ordered Mr. Charles shackled? Yes. No. Yes, it does. Actually, Your Honor, the specific He came into court shackled, didn't he? Yes, he did, but he ordered him shackled before the jury. Oh, I see what you're talking about. I'm sorry, am I perhaps not clear? Here comes a man into court to try, and the judge says, put shackles on him. He came into court shackled, yes. He came into court shackled. And he was forced to stand. And then he remained shackled. He remained shackled before the jury. There was some discussion about whether he was dangerous or whether he wasn't. Correct. And the court ruled that he should remain shackled. And the court ruled that he should remain shackled without making a particularized determination that Mr. Charles was at that point in time somehow a danger, and without determining whether there was potentially less restrictive alternatives. For instance, if the concern was his family coming in to break him out, posting a few extra guards outside the door, so Mr. Charles didn't have to stand before the jury representing himself while shackled at the feet and the wrists. That was what happened. So what our argument is is that there's an absolutely abundantly clear violation of the Sixth Amendment right to counsel. There's been argument that Mr. Child consented to this, because Mr. Charles actually did go forward with this trial. He did, to some extent, attempt to cross-examine witnesses. While he attempted to cross-examine his own counsel in the defense, he was not allowed to do so. He eventually did not testify after being talked to for quite a long time about his prior convictions and clearly not understanding the nature of what was going to be done on cross-examination. But he did, in fact, attempt to represent himself. Whether that's consent to self-representation, there must first be found that Mr. Charles actually had a choice. Well, he had a choice between being represented by Mr. Rockwell or representing himself. What the Court said it would not do is appoint another attorney. So if he had the option of being represented by Mr. Rockwell, can you really say he's been denied right to counsel? He didn't like Mr. Rockwell. Mr. Rockwell wouldn't present the defense that he wanted to present for himself. But I don't know that the defendant has a constitutional right to have an attorney present the defense that the defendant himself insists upon. This Court has already ruled in an en banc decision in Shell v. Witte that forcing a defendant to stand trial, the counsel with whom he has an irretrievable breakdown in a relationship, is the same as forcing a defendant to trial without counsel. Irretrievable breakdown is simply your inference from the fact that Mr. Rockwell wouldn't present the defense that Mr. Charles wanted him to present. And why Mr. Rockwell wouldn't present that defense, we don't know. We don't know if there was anything legitimate in Mr. Charles' complaints about Mr. Rockwell. We do know that Mr. Charles gave him a list of nine witnesses, including Mr. Tucker, and that Mr. Rockwell didn't bother to subpoena them or anyone in defense. We do know that Mr. Rockwell's intent when he stood up that day was not to answer, I am ready for trial, I have a defense to present on behalf of Mr. Charles. Here I am. Mr. Rockwell's intent, and what he did, was immediately renew the motion to withdraw. There is absolutely no evidence in the record that Mr. Rockwell was prepared and ready to defend Mr. Charles, nor is there any reason to doubt that Mr. Charles did in fact have the defense that Mr. Tucker was willing to provide him, that the drugs were planted, that Mr. Charles was targeted because of who he was. That's a viable defense. And at this moment I'll reserve the remaining one minute and ten seconds for rebuttal. May it please the Court, I'm Jennifer Lloyd representing Superintendent Moss. The ruling at issue in this case is the Court's order allowing Mr. Rockwell to withdraw. At that time, defendant or petitioner had the opportunity to be heard. Petitioner makes the argument today that we don't know exactly what the conflict was between petitioner and his counsel, and I beg to differ. We know exactly what the conflict was. Both petitioner and his counsel got up in court and explained. What petitioner said was, my lawyer won't cooperate with me, and didn't really explain much more than that, but then counsel explained much more fully. He wants to present a defense. I've investigated. I've spoken to some of these witnesses, and I don't believe there are any facts to support it. I'm not really sure what more of an inquiry the Court could have done in this case. The Court could have delved into specifics, but the nature of the conflict was clear. This is not a situation like the Schell v. Wittig case where, one, the petitioner was claiming that there was a legal conflict, not just a disagreement as to tactics. But second of all, the problem in Schell was that the Court didn't make any inquiry. The petitioner had made the motion. The Court didn't act on it. The case proceeded. And so the remedy in that case was to remand back to the lower court to deal with the motion. In this case, there's no more inquiry to be had. The Court gave petitioner the opportunity to explain. Petitioner explained. We know what the nature of the disagreement was, but as the state court found, that was insufficient to require the Court to appoint new counsel. Is there any problem about the shackles? Well, first of all, the district court correctly concluded that the shackling claim was procedurally defaulted. Petitioner could have and, in fact, was obligated to, if he wanted to raise that issue in the state court, was required to raise that on his direct appeal. He didn't do that. So he failed at that level. Now, he makes the argument that he raised the issue in his post-conviction petition for state post-conviction relief. However, the state courts rejected that petition as being untimely under the state statutes, and therefore he couldn't have, even if that was a proper place for him to raise that claim, he didn't do so. You know what? It's not disturbing, but it's unusual. Let's say he didn't raise it. Let's just say the only thing that happened was he was in court shackled, and the judge had to see it, and the jury had to see it, and there was no order to remove him. Nothing happened. He just had to proceed with the shackles. He was going to represent himself if he didn't accept the lawyer that the judge said he should have. He should proceed to trial either with him or without him, but he wasn't going to appoint a new lawyer and delay it further. So when he said no, then he had to proceed with shackles on. So when we look at the posture of the case, we know that much is so. He was there, and he was shackled. And do we know from this record why? We do. There was a hearing. There was a hearing at which the state called several correctional officers and other law enforcement personnel to testify about his dangerousness. So this isn't a case where he was brought in in shackles, nobody said anything, and the jury was left to make its inferences from that fact. What we have is a situation where the issue was raised. The issue was before the state court. The state court heard the testimony of the witnesses. Perhaps a reasonable judge could have concluded differently from those witnesses and said, well, it's sufficient to have a deputy sitting right here, and that will protect the safety of the courtroom or prevent escape, those types of things that the court was concerned about. So I agree with you, Judge, that, you know, a person could look at this situation and conclude that perhaps full shackling was not absolutely required, but that's not the scope of this court's review. What this court has to determine is whether the state courts unreasonably applied the United States Supreme Court precedent in making that ruling. And, again, that's assuming that this was all properly raised and preserved below, and our position is that it was defaulted. But even assuming that the question was on the merits is before this court, I think that given the inquiry that the state court did, it did not unreasonably apply United States Supreme Court precedent in ruling the way it did and in declining to remove the shackles. Unless the court has... Well, and our position is that the court was well within its rights to make that determination, that this is a case in which defendant elected to proceed the way he did, not as to the shackles, I'll set that aside, as to the removal of his counsel. I suspected you were going to say that this was a situation where the only objection to the lawyer was the lawyer's refusal to proceed with a defense that wasn't a defense in the lawyer's opinion. Exactly. Exactly. And that the court made the inquiry, the court explained to Petitioner the consequences of his continued refusal to cooperate with this lawyer or his continued request for this lawyer to be able to withdraw. Petitioner knew the consequences. The court expressly advised him that there were significant disadvantages to his proceeding pro se, and Petitioner stood on his right to do so. And so this isn't a situation where we can look and say, you know, that Petitioner wanted to proceed without counsel if he had all the choices in the world. He wanted a different lawyer. He wanted to start that process over again. But given the choices that he had, he elected by his conduct, by continuing to insist that his lawyer be allowed to withdraw, he elected to proceed on his own. The trial court appears to have approached this, at least as far as the defendant himself was concerned, pretty late in the process. And in a fashion where it was pretty clear the trial court thought he had an understanding, I can say he, actually I don't know, but anyway, he had an understanding as to what's involved. The level of inquiry toward defendant as to what the problem was was pretty limited. Do you agree with that? Well, I'm not sure. Certainly what Petitioner said was limited. He didn't say very much, but I don't think he was precluded in any way from explaining any number of things that he wanted to explain. Sometimes, particularly the pro se party, you have to make more than the opportunity. You have to extract or dig or inquire further. And there didn't seem to me to be a whole lot of digging by the trial court because the trial court thought it knew what the problem was. Well, I'm not sure. There clearly was some history behind this, and our record doesn't tell us exactly what had happened. But what is clear is that the court had inquired of counsel before. There had been an earlier motion in November filed by Petitioner saying, we have a legal conflict because I filed bar complaint in a civil lawsuit against my lawyer. I don't know that any action was ever taken on that. However, on the day of trial when Petitioner had the opportunity to be heard, that wasn't the nature of his complaint. The nature of his complaint was that his lawyer, he's unwilling to cooperate with me. And then the court asked him, will you tell me for a moment what your defense is? Petitioner tries to explain, has some trouble. The court has to redirect him. My question is, what would your defense be and what would have been investigated? And they spend several pages going through this. And so I don't think this is a situation where Petitioner says, there's been a breakdown in communication, and the trial court says nothing further and concludes that that's insufficient. Mr. Rockwell made quite clear what the defense was. A, discrimination because he was Native American. B, the drugs were planted. He said he made some inquiries regarding, A, discrimination, and he found some indication that there was discrimination against him, but he wouldn't see that as a defense. And, B, there was no evidence that the drugs were planted. Exactly. But the only, I guess the reason I was focusing on what Petitioner had said was because the court gave him the opportunity to speak first. And for several pages, Petitioner sort of referred to the lack of cooperation by the lawyer, and then the lawyer explained in much more detail exactly what the nature of the disagreement was. I see that my time is up. Unless the court has questions, I have nothing to add to the brief. Thank you. Puddle. Ma'am, before you sit down, tell us what you want us to do. I would like you to reverse the district court with remand with the mandate. On what basis? On the basis that he was denied counsel and on the basis that he was unconstitutionally shackled. There was, in fact, evidence provided to the court from Mr. Tucker, one of the alleged participants in this drug sale, at ER 400, that I saw the drugs planted. At ER 144, that was one of the witnesses. Mr. Charles wanted subpoenaed, but his trial counsel did not. Now, his trial counsel — As an officer of the court, would you have called him? If I had no reason — Knowing what the lawyer knew? We don't know that the lawyer knew anything for reasons not to call him. That would be total supposition based on this record. Why would it be supposition when he said, I looked into the planting of the drugs and there's no evidence that the drugs were planted? Isn't that what the lawyer said? No, that's not what he said. What did he say? If you would like me to read from the transcript. Let's see. Where are you reading from? Well, let me find the issue. I approached you some time ago. There are several witnesses that Mr. Charles has given the names of petitioners, potential witnesses to Mr. Stephen Burns, who's the investigator I obtained the services of. Then he explains who they were. I guess the major problem is I was somewhat of a loss under some of the other evidence that I had available to me as to why that would necessarily be a defense of the particular charge. Judge Beyer wants you to tell him what page you're reading from. I'm reading from, I'm sorry, ER 28. You mentioned 490 of the excerpts of record as being a culvert statement that he saw the drugs planted. I have 490 here. I'm sorry. It's a certificate of service. It's ER 400. 400. Yes. It's Mr. Tucker's affidavit. Let's see. I observed him, a guard, place his hand in one of Calvin's coat pockets. Then he informed us that we were acting suspicious and for both of us to go to the office to be strip searched. Mr. Tucker is one of the individuals allegedly involved in this transaction. Mr. Tucker gave an affidavit saying that's what he saw, that's what he would have testified to. Mr. Tucker was one of the individuals Mr. Charles specifically mentions on the record as someone he would like to have had subpoenaed on behalf of his defense. Mr. Rockwell did not do so. It is interesting to note that Mr. Rockwell is being required to explain to the court why he hadn't prepared a defense in front of the prosecutor. This court noted in the United States v. Gonzalez that when you put the defendant and his counsel in the position of having to explain on the record in front of the prosecutor why there's a problem in the relationship, you create a conflict. That is precisely what the trial court did. It should have addressed this issue in November. It should have addressed this issue at the latest in January. It should have addressed this issue with an opportunity for Mr. Charles and his counsel to talk about it outside the presence of the prosecuting officer. It never did so. As a result, we don't have a record of what really happened. This court has already addressed the situation in Daniels v. Woodford and said that it was reversible error to fail to create a record that we could review the conflict issues in counsel. In Hendricks v. Zenon, this court said it was reversible error to the Oregon courts to interpret a request for alternate counsel to be a request to represent yourself. This court has already addressed this precise situation, and in each circumstance has reversed the conviction. And that engranted the writ, and that is what should occur. And I would point out that clearly established Supreme Court authority said in 1970, in Illinois v. Allen, shackling is the last thing you want to do. Not only do you have to find a reason to shackle, but you have to consider less restrictive alternatives. The trial court never made that consideration, never determined that there was a less restrictive alternative. If you look at the evidence presented in the court of shackling, which is at ER 31-50, it is all about Mr. Charles's family. It is not about Mr. Charles acting out. It is not about him threatening to escape. If there was a necessity to prevent that, a couple of guards outside the courtroom door would have more than sufficiently done so. Instead, Mr. Charles was required to represent himself while standing fully shackled. He was given the opportunity to unshackle one hand and take notes, and he said, that's fine, I'll just remain shackled. He said he didn't want to be a hassle. He said that the court had overwhelmed him. He said that it really didn't matter what he was going to do. Doesn't the record show he said, I'm comfortable with my shackles? No, he specifically said the words, I'm fine in my shackles, I don't want to cause a hassle. Yeah, I'm fine in my shackles. Because he didn't want to cause a hassle. He didn't say I'm comfortable with it. He said, I'm fine in them. I interpreted that as I'm comfortable with them. In other words, I'm fine in my shackles and I won't be. At 26, he said, I'd be a fool to oppose the court here. He said, I'm not choosing to represent myself. There's no question that the court was overwhelming him. He specifically said that at ER 147. The court tells him he's going to be fully shackled and then says, by the way, would you like one hand to be free? The court tells him to subpoena a witness or rest in 30 seconds when he's been sitting there fully shackled for the last three hours after learning that he's going to represent himself. It's not as if Mr. Charles was given a whole lot of opportunity to either make choices or have those choices respected. They're asking us to retry the situation sitting here. We haven't seen Mr. Charles. We don't know what the situation was before the court. I'm asking you to apply Illinois v. Allen, which said the court must consider less restrictive alternatives, and that was not done. I'm asking you to apply the Supreme Court's determination last year in DEC that even though you have a convicted murderer at a penalty phase, you do not get to automatically assume that you can shackle him. That's what I'm asking. All right. Thank you very much. Thank both counsel for their argument. The case just argued is submitted. We are in recess. Thank you.
judges: Farris, Clifton, Bea